E-FILED
Friday, 19 December, 2025  02:42:22 PM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

LAWRENCE DEWAYNE
WALLACE,

    Plaintiff,

v.

    Case No. 3:23-cv-03311-JEH

ILLINOIS DEPARTMENT OF
CORRECTIONS, *et al.*

    Defendants.

**Order**

Plaintiff, proceeding pro se and presently incarcerated at Western Illinois Correctional Center, filed the present lawsuit pursuant to 42 U.S.C. § 1983, alleging a First Amendment claim related to the confiscation of a manuscript. The matter comes before this Court for ruling on the Defendant's Motion for Summary Judgment on the issue of exhaustion of administrative remedies (Doc. 52) and Plaintiff's Motion for Leave to File Auxiliary Exhibits (Doc. 66). For the reasons discussed, *infra*, Defendant's motion is granted and Plaintiff's motion is denied.

**I**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be

1

drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II

### A

Plaintiff filed this lawsuit on October 24, 2023. (Doc. 1). As summarized by the Court, Plaintiff's amended complaint alleged the following:

> Plaintiff alleges that a non-defendant prison official conducted a shakedown of his cell and later issued a shakedown slip for "two small strips of paper" and a "stinger" the official deemed contraband. Plaintiff alleges that he and his cellmate returned from the yard a short time later to find their cell "totally wrecked." Plaintiff alleges that he discovered that officials had confiscated a book manuscript that he had been writing without acknowledging that they had taken it or issuing a shakedown slip. Plaintiff alleges that Defendant Little later referenced the fact that his book manuscript's pages were unnumbered. Plaintiff alleges that he was found guilty of a rule violation related to the strips of paper and stinger, but that he was never issued a ticket for the manuscript.

> Plaintiff alleges that he has not recovered his book manuscript, and that Defendants Haston, Wohlfield, and Greene violated prison rules that permitted him to send the book manuscript home if it was deemed contraband. Plaintiff alleges that Defendant Little did not investigate the whereabouts of the missing manuscript.

2

(Doc. 23 at 2). The Court found that Plaintiff stated First Amendment claim against Defendant Little in his individual capacity for the alleged confiscation of his manuscript. *Id.*

Illinois prison grievance rules require an inmate to first attempt to resolve their issues informally with prison staff, and, if unsuccessful, a prisoner may file a written grievance on a form provided by the prison. 20 Ill. Admin. Code § 504.810(a). The grievance must be filed "within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance," unless the prisoner "can demonstrate that a grievance was not timely filed for good cause…." *Id.* § 504.810(a). The grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.* § 504.810(c). If an inmate does not know the names of the officials involved, he "must include as much descriptive information about the individual as possible." *Id.*

A grievance officer considers each grievance and submits a recommendation to the Chief Administrative Officer ("CAO"), who notifies the inmate of his decision. *Id.* § 504.830(d). An inmate may appeal the CAO's decision to the Director/Administrative Review Board, but he or she must do so within 30 days of the decision. *Id.* § 504.850(a). Once an appeal is received, the Administrative Review Board ("ARB") reviews the appeal and provides the Director with a written report of its findings and recommendations. *Id.* § 504.850(e).

An inmate may also submit a request for a grievance to be handled on an emergency basis by forwarding it directly to the CAO. *Id.* § 504.840. If determined to be a non-emergency, the CAO must notify the inmate that he or she may

resubmit the grievance via the normal procedures. *Id.* 504.840(c). An inmate grieving "issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues," must send his or her grievance directly to the ARB. *Id.* 504.870(a). Once received, the ARB reviews the grievance the same way it handles appeals. *Id.* 504.870(b).

The prison grievances rules identify four circumstances that require an inmate to send the grievance directly to the ARB:

1) Decisions regarding protective custody placement, including continued placement in or release from protective custody;

2) Decisions regarding the involuntary administration of psychotropic medication;

3) Decisions regarding disciplinary proceedings that were made at a facility other than the facility where the offender is currently assigned;

4) Other issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues.

*Id.* 504.870(a). Once received, the ARB reviews the grievance the same way it handles appeals. *Id.* 504.870(b).

### B

Plaintiff filed grievances related to his manuscript on June 21, 2023, July 18, 2023, and July 24, 2023. All three grievance arise from the incident that occurred May 16, 2023, when prison officials sent Plaintiff to segregation and apparently packed up his property at some point thereafter.

Plaintiff's first grievance, dated June 21, 2023, provided the date that the incident occurred, his cell number, the name of his cellmate, a description of the property he was missing, including the manuscript, and that the property may have been mixed up with his former cellmate's property. (Doc. 52-1 at 2-3). The

counselor responded to Plaintiff's first grievance on July 19, 2023: "Please see attached response. Attachment must remain [with] grievance for processing." (Doc. 52-1 at 2). The parties did not provide a copy of the referenced response. The grievance officer recommended denial of this grievance on July 24, 2023, noting that Plaintiff had spoken with Internal Affairs and that officials had given Plaintiff an envelope of documents that they had received from his former cellmate. (Doc. 52-1 at 1). The CAO concurred on July 28, 2023. *Id.* Plaintiff appealed. *Id.*

Plaintiff filed his second grievance, dated July 18, 2023, before he had received the counselor's response to his first grievance. The grievance requests a response to his first grievance and describes a meeting held on June 30, 2023, in which Defendant Little had told Plaintiff the first grievance was "complete" and that he could not retrieve video footage from May 2023 that Plaintiff had requested. (Doc. 52-5 at 2-3). The counselor responded to this grievance the same day: "This is a grievance grieving a grievance response. [June 21, 2023, grievance number]." *Id.* at 2. The grievance officer recommended denial of this grievance on July 25, 2023, referencing his response to Plaintiff's first grievance issued the same day. *Id.* at 1. The CAO concurred with this recommendation on July 28, 2023. *Id.* The ARB denied Plaintiff's appeal for the July 18, 2023, grievance on August 28, 2023, stating "Does not follow the DR 504F. It is inappropriate to file a new grievance on an already filed grievance. [The June 21, 2023, grievance appeal] was received on 8/9/23 and is pending here with the ARB." (Doc. 52-6).

Plaintiff filed a third grievance, dated July 24, 2023, regarding what he characterized as "Theft; violation of U.S.C.A. rights," arising from the same May 16, 2023, incident as the previous grievances. (Doc. 52-2 at 2-3). Plaintiff added that he had attempted to report a theft to the Brown County Sheriff's Department, that he had been permitted to possess the missing manuscript for approximately ten

5

years, and that the manuscript had disappeared after the May 2023 incident without issuance of a shakedown slip or other notice that it had been confiscated. *Id.* Plaintiff stated his belief that "Western Illinois Correctional Center knowingly and intentionally stole, threw away, or discarded my manuscript." *Id.* at 3.

Plaintiff's counselor responded on July 24, 2023, stating that the grievance was a duplicate of the June 21, 2023, grievance "which has been answered by the grievance officer [with] no additional information provided. Please allow the grievance process to complete." *Id.* The grievance officer responded to the grievance without addressing Plaintiff's allegations that officials had unlawfully confiscated or destroyed his manuscript and recommended its denial as moot on August 1, 2023. *Id.* at 1. The CAO concurred the next day. *Id.* Plaintiff appealed on August 6, 2023. *Id.*

The ARB denied Plaintiff's appeal for the first grievance on December 7, 2023, stating that the issue had been appropriately handled at the facility. (Doc. 52-4). The ARB's response does not reference Plaintiff's third grievance, but, according to an affidavit from an ARB official, the response was intended to address that grievance as well. (Doc. 52-7 at 3, ¶ 11).

### III

The Prison Litigation Reform Act (PLRA) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2013). The PLRA does not define the process a prisoner must utilize; rather, "state law establishes the administrative remedies that a state prisoner must exhaust for purposes of the PLRA." *Lanaghan v. Koch*, 902 F.3d 683, 687 (7th Cir. 2018).

The PLRA requires only that inmates exhaust available remedies. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) ("An inmate…must exhaust available remedies, but need not exhaust unavailable ones."). A formal grievance process is unavailable when the process: (1) "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) is "so opaque that it becomes, practically speaking, incapable of use;" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

The PLRA requires only that inmates exhaust available remedies. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) ("An inmate…must exhaust available remedies, but need not exhaust unavailable ones."). A formal grievance process is unavailable when the process: (1) "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) is "so opaque that it becomes, practically speaking, incapable of use;" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

Administrative remedies also become unavailable "[w]hen prison officials fail to timely respond to a prisoner's grievances." *Jones v. Lamb*, 124 F.4th 463, 468 (7th Cir. 2024); *see also Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024) ("If administrative remedies are genuinely unavailable or nonexistent because, for example, prison employees failed to respond to properly filed grievances, we consider the prisoner to have satisfied the exhaustion requirement."). Or, when a prisoner "has not been informed of the process, whether due to misconduct by prison employees, or because his personal circumstances preclude him from being able to make use of the process." *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023).

Failure to exhaust is an affirmative defense, and, therefore, defendants bear the burden of showing that a prisoner failed to exhaust all available remedies, not on a prisoner to show that the remedies were unavailable. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018); *Smallwood*, 59 F.4th at 315.

Plaintiff arguably fully exhausted his second grievance when officials provided the response to his first grievance as requested. *Thornton v. Snyder*, 428 F.3d 690, 696-97 (7th Cir. 2005) (when prisoner receives requested relief via the grievance process, administrative remedies are exhausted). The content of the second grievance nonetheless does not provide facts sufficient to place officials on notice that they had violated Plaintiff's constitutional rights or done anything other than fail to respond to his first grievance or investigate as thoroughly as he would have liked. The Court finds that this grievance did not exhaust his administrative remedies for the claims at issue in this lawsuit. *See Schillinger v. Kiley*, 954 F.3d 990, 996 (7th Cir. 2020) (inmate who grieved incidents related to attack, but unrelated to asserted failure to protect claim did not adequately put officials on notice of constitutional claim for purposes of exhausting his administrative remedies).

Plaintiff's third grievance changed his characterization of the events that had transpired in May 2023. Prison officials did not reject this grievance as untimely or assert that it was otherwise procedurally deficient. Plaintiff's asserted absence from the cell when his property was presumably collected or confiscated and officials' failure to provide a shakedown slip or other documentation indicating those involved made it impossible for him to identify by name the officials responsible. If, as prison officials had concluded, the third grievance was a duplicate of the first, Plaintiff had already provided all information known to

him. The record thus does not support Defendant's argument that Plaintiff failed to comply with the rule requiring same.

Plaintiff clearly raised the issue in his third grievance that he believed that officials had unconstitutionally confiscated his manuscript, apparently because he had concluded that his manuscript had not been innocently misplaced as he alleged in his first grievance. The counselor, grievance officer, and CAO failed to address this aspect of his grievance, which would suggest that remedies became unavailable, except that the record does not permit a reasonable inference that this omission interfered with Plaintiff's ability to appeal, or that the ARB lacked the ability to take "some action" regarding his complaints. *Booth v. Churner*, 532 U.S. 731, 740 (2001) (process remains available so long as officials have authority to take "some action" regarding inmate's complaints).

The problem for Plaintiff is that he filed this lawsuit before the ARB responded to his first grievance. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) ("[T]he PLRA requires prisoners to exhaust administrative remedies *before* filing suit; a "sue first, exhaust later" approach is not acceptable.") (emphasis in original); *Ford v. Johnson*, 362 F.3d 395, 398-400 (7th Cir. 2004). At the time Plaintiff filed this lawsuit, the appeals of his first and third grievances were still pending and had been pending for just short of three months. This was well within the ARB's aspirational six-month response deadline, negating any inference that the process became unavailable because the ARB took too long to respond. 20 Ill. Admin. Code § 504.830(e) (ARB shall resolve appeal "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances."); *Ford*, 362 F.3d at 400 (deadlines in Illinois administrative code are aspirational and respond within those deadlines does not necessarily mean that the process became unavailable). The fact that the ARB responded to

Plaintiff's grievances within the six-month period supports a finding that the process remained available.

Had Plaintiff waited to file suit until after the ARB responded in December 2023, then the record would support a finding that he fully exhausted his administrative remedies or that the failure to address his assertion that his constitutional rights had been violated rendered the process unavailable. Because he did not, the Court finds that Plaintiff failed to fully exhaust his available administrative remedies prior to filing suit.

IV

Plaintiff filed a Motion for Leave to File Plaintiff's Auxiliary Exhibits from Outside Source. (Doc. 66). The motion requests leave to permit his brother to file exhibits that "would establish the fact Plaintiff has written numerous manuscripts over the duration of Plaintiff's incarceration." *Id.* at 1.

The Court does not permit non-attorney third parties to file documents in a case, and the exhibits do not appear relevant to the issue of failure to exhaust administrative remedies. Plaintiff's motion is denied.

**Therefore:**

1) **Plaintiff's Motion [66] is denied.**

2) **Defendant's Motion for Summary Judgment [52] is granted. This case is dismissed without prejudice. The clerk of the court is directed to enter judgment in favor of Defendant and against Plaintiff. All pending motions not addressed below are denied as moot, and this case is terminated. Plaintiff remains responsible for the $350.00 filing fee.**

3) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an**

**appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith.");** *Walker v. O'Brien,* **216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal.**

*It is so ordered.*

Entered: December 19, 2025

s/Jonathan E. Hawley
U.S. District Judge

11